Filed 2/24/15  P. v. Gutierrez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066167 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF142787) |
| JOHNNY ALFARO GUTIERREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Patrick F. Magers, Judge.  Reversed and remanded, with directions.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Johnny Alfaro Gutierrez of assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2)), intimidating a witness (§ 136.1, subd. (b)(1)), possession of a firearm by a felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)) and active participation in a criminal street gang (§ 186.22, subd. (a)).  The jury also sustained allegations that the assault, witness intimidation and gun possession counts were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b), and Gutierrez personally used a firearm in committing the assault and witness intimidation offenses within the meaning of former section 12022.5, subdivision (a) (repealed by Stats. 2010, ch. 711, § 4, effective Jan. 1, 2011), and section 1192.7, subdivision (c)(8).  Additionally, the jury found Gutierrez committed the offenses while released from custody pending trial on a felony case.  (Former § 12022.1 ( also repealed by Stats. 2010, ch. 711, § 4, effective Jan. 1, 2011).)  In a bifurcated proceeding, the trial court found Gutierrez suffered a prior violent or serious felony or "strike" conviction (§ 667, subds. (b)-(i)) and a prior serious felony conviction (§ 667, subd. (a)).

The trial court sentenced Gutierrez to an indeterminate term of seven years to life on the witness intimidation count plus a determinate term of 12 years four months on the other convictions and allegations.

In the first appeal, we reversed the indeterminate term of seven years to life on the intimidating a witness count and remanded the matter for resentencing.

---

[1]     All further statutory references are to the Penal Code.

Upon remand, the court resentenced Gutierrez to 28 years four months in prison, as follows: (1) on the count 1 assault with a firearm charge, six years (double the middle term of three years), plus 10 years for the gang enhancement under section 186.22, subdivision (b)(1)(C), plus four years for the firearm-use enhancement under section 12022.5, subdivision (a)); (2) on the count 3 possession of a gun by a felon charge, one year four months; (3) on the out-on-bail enhancement, two years; and (4) on the prior serious felony enhancement, five years.

Gutierrez appeals, asserting the court, upon remand, erred in imposing both the section 12022.5 firearm enhancement and the 10-year gang enhancement under section 186.22, subdivision (b)(1)(C). The People agree that this was error and that the matter must be again remanded for resentencing. We agree with both Gutierrez and the People that the sentence was erroneous and therefore remand this matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

At about 3:00 a.m., on April 27, 2008, Fernando Meza, a resident of the Casablanca area of Riverside, was awakened by the barking of his dog in the backyard. When Meza went to investigate, he saw Gutierrez on the opposite side of the rear wall of the yard spray painting the wall with graffiti; another man was watching him. The graffiti included "Negro," which is Gutierrez's gang moniker.

---

[2] We take the factual background from our decision in a previous appeal in this matter, *People v. Gutierrez* (Oct. 28, 2013, D063498 [nonpub. opn.]), as to which we granted Gutierrez's request for judicial notice on October 24, 2014.

3

Meza told Gutierrez and his companion to go home. Gutierrez indicated to Meza that he was a member of the Casablanca street gang and Meza should not be telling him to go home. Gutierrez took out a gun, put it to Meza's forehead and told Meza he should go to sleep if he did not want to be killed. Meza told Gutierrez to do what he had to do. Gutierrez sprayed Meza's face and neck with the spray paint.

By this time, Meza's wife had entered the backyard. Gutierrez told her to take Meza away if she did not want to see him dead. Meza's wife told Meza, "Let's go." He complied and the couple went inside. As Meza was walking to the house, Gutierrez said if Meza called the police, he would come back and kill him.

Meza called 911. While on the phone, Meza and his wife heard gunfire.

Riverside Police Officer Jerry Post was in the neighborhood when he heard four or five gunshots. About 30 seconds later, Officer Post was dispatched to Meza's residence. As Officer Post drove to Meza's residence, he saw a silver truck with several individuals inside. The vehicle was driving away from the area. Officer Post made a U-turn and started to follow the truck. He observed a gun being thrown from the vehicle and turned on his emergency lights and sirens, but the truck continued moving. The driver ran a stop sign and the truck subsequently struck a curb and wound up facing the wrong direction before stopping. The occupants of the truck exited the vehicle and began to run. Four of them were detained near the truck. Three others continued to flee. Police found Gutierrez in an RV parked behind a house in the neighborhood. Another person who fled from the truck was hiding under a trailer in the same yard. The third person who fled was not caught. Several of the truck occupants were members of the Vagabundos street gang.

4

Police brought Meza to the location where the truck occupants were detained. Meza identified Gutierrez as the person who pointed a gun at him, threatened to kill him and sprayed him with spray paint. Meza was unable to identify Gutierrez's companion at the fence because Meza had not paid much attention to him.

Gutierrez stipulated that he is a member of the Vagabundos street gang and was a member on April 27, 2008. He also stipulated that Vagabundos is a criminal street gang within the meaning of section 186.22.

Detective Joe Miera of the Riverside Police Department's gang unit testified the Casablanca Rifa is a criminal street gang with approximately 250 identified members and it operates in the Casablanca neighborhood of Riverside, which is bisected by Madison Avenue. East of Madison Avenue is controlled by the gang's Evans Street clique and west of Madison is controlled by the Fern Street clique or Vagabundos. Gutierrez is an admitted member of the Vagabundos clique. VBS is the common symbol and name of the Vagabundos clique. Some Vagabundos members use a drawing of a vagabond or homeless person as a symbol for the clique.

Gutierrez has a tattoo on his head that reads "Vagabundos," a "VBS" tattoo on his chest, and a tattoo of a vagabond cartoon character. Underneath his "VBS" tattoo is "Casablanca" and on top of it is "Doing it 'till death."

In addition to Gutierrez's "Negro" moniker, the graffiti on Meza's wall included "Dangs" and "Rich." Detective Miera testified "Dangs" stood for "Danger," which was Juan Medina's moniker, and "Rich" probably referred to Richard Silva. Medina and Silva are Vagabundos members who were in the silver truck that fled the scene of the assault

5

on Meza. Miera said that the appearance of a gang member's moniker on a wall indicates the gang member was present when the graffiti was placed on the wall. Miera explained to the jury that respect is an important concept within gang culture, and gang members expect to be respected. By committing crimes and violent acts, gang members instill fear in the community and discourage law-abiding citizens from testifying against them. The primary activities of the Casablanca Rifa gang are assaults with a firearm and narcotics sales.

Detective Miera opined that Gutierrez's assault on Meza and his threat to kill Meza were committed for the benefit of, in association with, or at the direction of the Casablanca Vagabundos clique because such violent activities instill fear in the community and deter witnesses from testifying against gang members. Miera also opined Gutierrez was an active participant in Casablanca Vagabundos clique in April 2008.

At trial, both Meza and his wife identified Gutierrez as the individual who was spray painting the wall and then pointed a gun at Meza.

DISCUSSION

Gutierrez contends the court erred in imposing both the four-year firearm enhancement under section 12022.5, and the 10-year gang enhancement under section 186.22, subdivision (b)(1)(C). He asserts that imposition of both enhancements constituted improper dual use of the same firearm, in violation of section 1170.1, subdivision (f). This contention is well taken.

Section 1170.1, subdivision (f), provides in relevant part: "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly

6

weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense." In *People v. Rodriguez* (2009) 47 Cal.4th 501 (*Rodriguez*), the California Supreme Court held that the additional punishment for committing a violent felony to benefit a criminal street gang under section 186.22, subdivision (b)(1)(C), and the additional punishment for personal use of a firearm under section 12022.5, subdivision (a), "fall squarely within the limiting language of section 1170.1's subdivision (f)." (*Rodriguez* at p. 508; see also *People v. Martinez* (2012) 208 Cal.App.4th 197, 199 ["trial court improperly imposed enhancements for both personal firearm use (§ 12022.5, subd. (a)) and committing a violent felony to benefit a criminal street gang (§ 186.22, subd. (b)(1)(C))"].)

Here, as in *Rodriguez,* the court erred in imposing both the personal firearm use enhancement and the gang enhancement. As the People concede, section 1170.1 prohibited the imposition of both enhancements, and consequently the trial court imposed an unauthorized sentence. We remand the matter to the trial court because "[t]he proper remedy" is not to strike one of the enhancements "but to reverse the trial court's judgment and remand the matter for resentencing," in order to "give the trial court an opportunity to restructure its sentencing choices in light of our conclusion that the sentence imposed here violated section 1170.1's subdivision (f)." (*Rodriguez, supra,* 47 Cal.4th at p. 509.)

In his reply brief, Gutierrez also requests that the trial court be instructed not to impose a sentence that is greater than the sentence the trial court imposed in this case. We decline Gutierrez's request to give an advisory opinion on a sentence the trial court may impose on remand.

7

## DISPOSITION

The matter is reversed and remanded for resentencing in a manner consistent with this opinion.

NARES, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.

8